PEOPLE v GAFFNEY

1. CRIMINAL LAW—PLEA OF GUILTY—STATUTES—COURT RULE—SUB-
   STANTIAL COMPLIANCE.
   The statute and a former court rule governing the taking of
   guilty pleas have been held to require only substantial compli-
   ance (MCLA 768.35; GCR 1963, 785).

2. CRIMINAL LAW—PLEA OF GUILTY—NATURE OF CHARGES—ADVICE TO
   DEFENDANT.
   A defendant was substantially advised of the nature of the charge
   against him during a plea-taking proceeding where the trial
   judge elicited from the defendant the fact that the defendant
   had discussed the charges with his attorney and understood
   them, and that the defendant knew he was pleading guilty to
   manslaughter and knew the maximum sentence he could re-
   ceive.

Appeal from Recorder's Court of Detroit, John
Patrick O'Brien, J. Submitted Division 1 Novem-
ber 7, 1974, at Detroit. (Docket No. 18373.) Decided
January 7, 1975.

James Gaffney was convicted, on his plea of
guilty, of manslaughter. Defendant appeals. Af-
firmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training and Appeals, and

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 487, 492–495.
   Court's duty to advise or admonish accused as to consequences of
   plea of guilty, or to determine that he is advised thereof. 97
   ALR2d 549.

*Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*Charles Campbell,* for defendant on appeal.

Before: J. H. Gillis, P. J., and Allen and Peterson,* JJ.

J. H. Gillis, P. J. Defendant proffered a plea of guilty to manslaughter (MCLA 750.321; MSA 28.553) on May 23, 1973, and the trial judge accepted the plea June 7, 1973.[1] Defendant was sentenced to 8-1/2 years to 15 years in prison and appeals as of right.

Defendant argues that the trial judge did not adequately inform him of the general nature of the charge to which he pled guilty. The following testimony, taken at the guilty-plea hearing, is pertinent to this issue:

*"Q.* What is your name?
*"A.* James Gaffney.
*"Q.* What's your address?
*"A.* 9339 American.
*"Q.* How old are you?
*"A.* Twenty-three (23).
*"Q.* How far did you go in school?
*"A.* Eleventh Grade.
*"Q.* You understand the English language?
*"A.* Yes.
*"Q.* And does Mr. Pliskow represent you?
*"A.* Yes.
*"Q.* Are you satisfied with his services on your behalf?
*"A.* Yes.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] While the plea was not formally accepted until June 7, 1973, the actual plea-taking proceedings took place May 23, 1973. Therefore, GCR 1963, 785.7, which became effective June 1, 1973, does not apply here. *Cf. People v Shekoski,* 393 Mich 134; — NW2d — (1974), which applies to any plea taken on or after June 1, 1973.

"*Q*. Have you and he discussed the charges in this case?

"*A*. Yes.

"*Q*. Has he discussed with you the general nature of the charge that you are offering a plea to?

"*A*. Yes, sir.

"*Q*. Do you understand the nature of that charge?

"*A*. Yes, sir.

"*Q*. Do you know what the maximum sentence is in years on that?

"*A*. Yes sir.

"*Q*. What is it?

"*A*. Fifteen (15) years.

\*   \*   \*

"*Q*. Do you understand now that a plea of guilty to the included offense of manslaughter constitutes a conviction for that crime?

"*A*. Yes, sir.

\*   \*   \*

"*Q*. You've understood my questions and your answers that have been given were voluntarily?

"*A*. Right.

"*Q*. What do you want to do now?

"*A*. Plead guilty.

"*Q*. To what?

"*A*. Manslaughter."

We think the trial judge adequately informed defendant of the nature of the charge. GCR 1963, 785.3, which was in effect at the time this plea was offered, provides: "If the accused pleads guilty \* \* \* the court shall inform the accused of the nature of the accusation." See MCLA 768.35; MSA 28.1058.[2]

---

[2] This statute provides: "Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely,

*People v Butler,* 387 Mich 1; 195 NW2d 268 (1972), held that the statute and the court rule require only substantial compliance. See *People v Chappell,* 44 Mich App 204; 205 NW2d 285 (1972); *People v Sanders,* 54 Mich App 541; 221 NW2d 243 (1974). In the case at bar, defendant was substantially advised of the nature of the charge when the trial judge elicited from defendant the fact that defendant had discussed the charges with his attorney and understood the nature of those charges. Moreover, the record clearly shows that defendant knew he was pleading guilty to manslaughter[3] and

---

with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed."

[3] The following guilty plea hearing testimony clearly establishes the factual basis for the plea:

"*Q.* All right now, tell me what you did.

"*A.* Well, I took this guy up to the dope house to stick it up.

"*Q.* What guy?

"*A.* Richard Reed. When he got up there, he announced a stick up.

"*Q.* Who announced the stick up?

"*A.* Richard Reed; one of the guys ran and the other guy tried to take the gun from him, he snatched it away from him and shot him.

"*Q.* Who was carrying the gun?

"*A.* Richard Reed.

"*Q.* He was carrying a gun—what kind of a gun?

"*A.* A .32.

"*Q.* Pistol?

"*A.* Right.

"*Q.* And one of the men in the dope house did what?

"*A.* One of them ran and the other one tried to take the gun from him.

"*Q.* Somebody ran and another man there tried to take the gun away from Reed?

"*A.* Right.

"*Q.* What happened?

"*A.* He shot him.

"*Q.* Did they get the gun away from him?

"*A.* He got it away from him and clicked it on him and it didn't go off; Reed got it back from him and clicked it on him and it went off.

"*Q.* Then what happened?

"*A.* He was killed.

that the maximum sentence for this offense was 15 years.

We affirm the defendant's conviction.

All concurred.

---

"*Q*. You were there during this?

"*A*. Right.

"*Q*. What was your purpose in going to that place?

"*A*. To rob it.

"*Q*. Did you have a gun?

"*A*. No.

"*Q*. You knew that Reed had a gun?

"*A*. Right.

"*Q*. In other words, you and he planned this?

"*A*. Right.

"*Q*. You did plan it?

"*A*. I took him up there to stick it up.

"*Q*. Did you know he had a gun with him when he went up there?

"*A*. Right."